GRACE MELROSE *v.* INDUSTRIAL ASSOCIATES, INC., ET AL.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND BALDWIN, JS.

Argued January 11—decided March 7, 1950.

*Paul M. Palten* and *W. Arthur Countryman, Jr.*, for the appellants (defendants Gaudette et al. and Bezzini, respectively).

*Victor F. DeNezzo*, for the appellee (defendant receiver).

*William S. Gordon, Jr.*, with whom was *Joseph A. Levy*, for the appellee (defendant Investors Diversified Services, Inc.).

MALTBIE, C. J.   The question presented in this appeal is whether the trial court committed error in confirming a sale of property in receivership which was made free of incumbrances, where the proceeds of the sale were not sufficient to discharge in full certain existing mortgages on the property.   The appeal was taken by the owners of two second mortgages, each of which was upon certain of the lots included in the tract of land ordered sold.

The trial court has made no finding, and we must determine the case upon the facts which were alleged in various motions made by the parties to the proceeding and in reports to the court by the receiver and appraisers and which all parties agreed in the argu-

ment before us we might regard as true. The property was a housing development consisting in the main of thirty-eight lots. Upon all of the lots the construction of houses had been begun, and the work was in various stages of completion. Each lot was subject to a first mortgage for a building loan; ten of them were grouped in a second mortgage to Morris Bezzini, one of the appellants, and the other twenty-eight were grouped in a second mortgage to Arthur J. St. Marie, Ely J. Gaudette and Elphege Gaudette, the other appellants. We shall hereinafter refer to the last mortgage as the Gaudette mortgage. There was due on the first mortgage a total principal sum of about $105,000, on the Bezzini mortgage a principal sum of $12,000, and on the Gaudette mortgage a principal sum of $23,-000. The lots were also subject to mechanics' liens, and bonds for deeds had been given for the sale of certain of them. It appears in a transcript of one of the hearings before the trial court and seems not to be disputed that some arrangement was made with the holders of the bonds for deeds as a result of which they are no longer interested in the disposition of the matter before us.

On December 23, 1948, the trial court made an order that the tract be sold at auction; an auction was held, but on April 14, 1949, before the sale had been confirmed, the purchaser filed a motion for permission to withdraw his bid, and that motion was granted. Thereafter the receiver made another motion for the sale of the property, and it is with this order and the proceedings consequent upon it that we are concerned. The order directed the sale of the property at public auction free and clear of all incumbrances, except building, building line and zoning restrictions, taxes and rights in certain water heaters in the buildings on some of the lots; the lots were to be sold separately

unless a bid for the entire tract exceeded the total of all bids for the individual lots; if a sale on a bid for the entire tract was made, the amount received was to be apportioned to the various lots upon the basis of their appraised values, and the rights of any mortgagee or other incumbrancer upon any lot were to be transferred to the proceeds of the sale of the lot. An auction was held, bids were first received for the individual lots and then for the tract as a whole, and a bid of $126,000 for the tract as a whole exceeded the total of the bids for the individual lots. The receiver made a motion that a sale to this bidder be approved. The trial court ratified and confirmed the sale; it apportioned a part of the sale price to each lot; and it directed that the rights of mortgagees and lienors upon any lot should be transferred and attached to the proceeds of the sale of that lot and that the lot should thereafter be free and clear of any such mortgage or lien.

The appraised value of the ten lots covered by the Bezzini mortgage was such that, after deducting the amounts of the first mortgages upon them, the sum remaining was greatly in excess of the amount of the debt to Bezzini; and the appraised value of the lots covered by the Gaudette mortgage, after deducting from that value the first mortgage, similarly exceeded the amount due to Gaudette and his associates. The amount of the bid was less than the aggregate of the principal amounts due on the first and second mortgages by some $15,000, so that, if the first mortgage were given priority, approval of the bid by the court would decrease by that sum the amounts available to satisfy the second mortgages. If the amounts of the latter mortgages are apportioned to the several lots upon a basis suggested by the receiver, as was the apparent intent of the order, the Bezzini mortgage would

be discharged, but there would be nothing left to apply to the Gaudette mortgage on twenty-three of the lots. To illustrate: The appraised value of one of the lots included in the Gaudette mortgage was $4000; of the bid for the property, $2307.74 was allocated to this lot; the first mortgage on it was $2835; and after its payment there would be no balance left to be applied to the Gaudette mortgage. The security of the mortgage would remain only on five lots, out of the allocated price of which the mortgagees would receive a sum less than the amount of the debt due them by some thousands of dollars.

It should be borne in mind that this is not an attempt to foreclose a mortgage by sale under the statute. The case has been argued before us quite largely upon the question whether in this state a court has the power in a receivership action to order the sale of property of the estate free and clear of incumbrances upon it, relegating the incumbrancers to the proceeds of the sale for payment. That our courts may in a proper case make such an order of sale we do not doubt. A receivership is in essence a proceeding in equity, and at least where the mortgagee's rights are protected equity may so modulate the relief as to protect others having claims on the property. When the court orders a sale of property in receivership and transfers the lien of the mortgage to the proceeds, if they are sufficient to satisfy it, the rights of the mortgagee are not impaired. "Inherent in a mortgage is the right of the mortgagee to insist upon full payment before giving up his security, but that right is not impaired if the relief afforded accords him full compensation of his mortgage debt." *New England Mortgage Realty Co.* v. *Rossini,* 121 Conn. 214, 219, 183 A. 744. A sale in receivership which results in payment of the mortgage is in effect a redemption of it by the receiver for the

benefit of creditors of the estate. The right of a court to order a sale of property in receivership free of incumbrances in a proper case is generally recognized. *Van Huffel* v. *Harkelrode*, 284 U. S. 225, 227, 52 S. Ct. 115, 76 L. Ed. 256, 78 A. L. R. 453, and note, 458; note, 120 A. L. R. 921.

A sale by a receiver under order of court is a judicial sale and it becomes effective only when it is confirmed. *Mariners Savings Bank* v. *Duca*, 98 Conn. 147, 152, 118 A. 820; 45 Am. Jur. 309, § 396. The issue in this case is essentially not the power of the court to make an order of sale of property in receivership free of incumbrances but the propriety of its action in confirming such a sale when, upon report of the receiver, it appears that the proceeds are insufficient to discharge existing mortgages. We have no statute authorizing such a result, so that a claim cannot be made that the law had attached to the mortgage a risk of loss by reason of such a sale. It is not necessary in this action to seek to determine the exact nature of a mortgage under our law. Whether we stress the fact that in form and for certain purposes a mortgage is a conveyance of the legal title or regard it as, except to a limited extent, mere security for the payment of a debt, the fact remains that it creates in the mortgagee certain definite rights with regard to securing satisfaction out of the property it covers, the enforcement of which takes precedence, with a few exceptions, over any rights in or to the property subsequently arising. Some of the exceptions are where the statutes alter the rule, as in the case of municipal liens and, to a limited extent, mechanics' liens; *Wilcox* v. *Bliss*, 116 Conn. 329, 334, 164 A. 659; *Bridgeport People's Savings Bank* v. *Palaia*, 115 Conn. 357, 363, 161 A. 526; or where a buyer of property subject to a mortgage gives back as part of the transaction a purchase-price mortgage; but

the exceptions do not include such a situation as the one before us. Even where equity intervenes to marshal securities as between an earlier mortgage and a later one upon a part only of the property, it cannot do so in such a way as to jeopardize the security of the first mortgage. *Lomas & Nettleton Co.* v. *DiFrancesco,* 116 Conn. 253, 257, 164 A. 495.

"A receiver succeeds to the assets of the estate subject to all outstanding equities against it." *Searle* v. *Crampton,* 118 Conn. 42, 47, 170 A. 480. We have found no authority in our law which authorizes a court so to deal with the property in receivership as to subject holders of prior liens to loss. In fact our former decisions go far to determine that it cannot do so. In *Cooke* v. *Warner,* 56 Conn. 234, 14 A. 798, receivers of an insurance company sought to obtain certain securities deposited with the state treasurer by the company before its insolvency, as security for its policyholders. We held that the receivers were not entitled to them; we said (p. 239): "By the statute of this state, upon the insolvency of an insurance company a judge of this court is empowered to appoint receivers of its assets and annul its charter. But this statute cannot confer upon the receivers power to disregard any existing lawful contract. They can no more compel the trustee to surrender property lawfully subjected to a trust, than they can compel a mortgagee or pledgee to release without payment."

In *Brackett* v. *Middlesex Banking Co.,* 89 Conn. 645, 95 A. 12, the receivers of a banking company sought and obtained an order of court authorizing them to collect and administer certain collateral placed with two trust companies to secure debenture bonds the corporation had issued; we held that the order of the court was erroneous; we pointed out (p. 654) that the receivers took the assets of the banking company "bur-

dened with all valid liens and equities against it" and that the company had no right over the collateral except that of substituting other securities of equal value; and we said (p. 655): "The receivers had no higher right than the banking company had. They could not interfere with, nor be given power to interfere with, the vested rights of the debenture-holders in this collateral, nor could they take or be given possession of this collateral until the debentures were fully satisfied." We added (p. 657): "Whether or not this course will benefit these funds is of no pertinency. The sole question is, does it breach the contract between Banking Company and trust companies? If a court may in this case take property held in trust out of the hands of the trustees, administer it through a receiver, and turn the net proceeds back to the trustees, it may do this in every instance where property is placed in the hands of a trustee to secure a debt. And it would seem to follow that every agreement of lien or pledge may be similarly breached with impunity. The order, in our judgment, impairs the contract created by the trusts." In *City National Bank* v. *Stoeckel,* 103 Conn. 732, 132 A. 20, we had before us a question of priority between two mortgages given by a corporation, one of which included real and personal property, and a subsequent judgment lien against the property; the corporation had gone into receivership; we said (p. 743) that the nature of the receiver's rights was such that he would be entitled to claim a marshalling of securities as regards the real and personal security, but we added: "Such a procedure could not be adopted, however, if it would result in defeating the right of the plaintiff [mortgagee] to full payment of both its mortgage debts."

In the case now before us, for the court to approve a sale of the mortgaged property and transfer the claim

of the mortgagees to the proceeds received, when these proceeds represent a very substantial impairment of the security bound to satisfy the debts due to the mortgagees, is to do the very thing which we in effect held in these cases could not properly be done. If we need to go beyond our own state for authority, we find it in *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555, 55 S. Ct. 854, 79 L. Ed. 1593. In that case the court held invalid certain provisions of an amendment (Frazier-Lemke Act) to the Bankruptcy Act designed to assist farmers whose property had been mortgaged. The statute provided that, if the mortgagee refused to assent to the purchase of the property by the bankrupt at its appraised value, on a deferred payment basis, the bankruptcy court might stay proceedings for five years, during which the bankrupt might occupy the property at a reasonable rental and might at any time within the period pay for it at its appraised value, whereupon the court should order that possession and title be delivered to him. In the case before the court, the appraised value of the land mortgaged was less than half the mortgage debt. The court pointed out (p. 589) that Congress in enacting bankruptcy laws was not subject to the provision of § 10 of the first article of the United States constitution forbidding any state to pass any law impairing the obligation of contracts, but it held the law invalid because it was within the provision of the fifth amendment to that constitution that private property should not be taken for public use without just compensation.

The court said (p. 578): "For centuries efforts to protect necessitous mortgagors have been persistent. Gradually the mortgage of real estate was transformed from a conveyance upon condition into a lien; and failure of the mortgagor to pay on the day fixed ceased to effect an automatic foreclosure. Courts of equity,

applying their established jurisdiction to relieve against penalties and forfeitures, created the equity of redemption. Thus the mortgagor was given a reasonable time to cure the default and to require a reconveyance of the property. Legislation in many states carried this development further, and preserved the mortgagor's right to possession, even after default, until the conclusion of foreclosure proceedings. But the statutory command that the mortgagor should not lose his property on default had always rested on the assumption that the mortgagee would be compensated for the default by a later payment, with interest, of the debt for which the security was given; and the protection afforded the mortgagor was, in effect, the granting of a stay. No instance has been found, except under the Frazier-Lemke Act, of either a statute or decision compelling the mortgagee to relinquish the property to the mortgagor free of the lien unless the debt was paid in full. This right of the mortgagee to insist upon full payment before giving up his security has been deemed of the essence of a mortgage. His position in this respect was not changed when foreclosure by public sale superseded strict foreclosure or when the legislatures of many states created a right of redemption at the sale price. To protect his right to full payment or the mortgaged property, the mortgagee was allowed to bid at the judicial sale on foreclosure. In many states other statutory changes were made in the form and detail of foreclosure and redemption. But practically always the measures adopted for the mortgagor's relief, including moratorium legislation enacted by the several states during the present depression, resulted primarily in a stay; and the relief afforded rested, as theretofore, upon the assumption that no substantive right of the mortgagee was being impaired,

since payment in full of the debt with interest would fully compensate him." Later, referring to sales of property free of incumbrances under the Bankruptcy Act, the court said (p. 584): "But there had been no suggestion that such a sale could be made to the prejudice of the lienor, in the interest of either the debtor or of other creditors. By the settled practice, a sale free of liens will not be ordered by the bankruptcy court if it appears that the amount of the encumbrance exceeds the value of the property." If a serious impairment of the right of a mortgagee to secure payment of his debt from the mortgaged land amounts to taking his property without just compensation, certainly an order of court under which his security is gone and he can receive only a part of his debt from the proceeds of its sale constitutes an unlawful impairment of his contract rights.

The defendants claim that the mortgagees raised no objection to the order of sale. If, under that order, the tract as a whole or the individual lots had sold for a price or prices sufficient to pay the mortgages, they would have suffered no injury. They had no cause to object until, on the report of the sale, it appeared that the price received was insufficient to satisfy the debts due to them, or at least to the holders of the Gaudette mortgage.

The trial court was in error in affirming the sale. We reach this conclusion with considerable reluctance in this case, because we are aware that the trial court was at great pains to attempt to reach a solution of a trying problem, one which involved the completion of a considerable number of houses the need for which is great; but the application of essential legal and equitable principles leaves us no choice.

There is error, the order of the trial court is set aside

and the case is remanded with direction to disapprove the sale.

In this opinion the other judges concurred.