## In re Joseph W. HORNES and Janet W. Hornes, Debtors.

### Bankruptcy No. 92–53130. Document No. 13.

United States Bankruptcy Court, D. Connecticut.

Nov. 16, 1993.

---

Ira B. Charmoy, Charmoy & Nugent, Bridgeport, CT, for debtor/movant.

Peter L. Ressler, Groob, Ressler & Mulqueen, P.C., New Haven, CT, for respondent Avco.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

On June 1, 1993, the Supreme Court held that § 1322(b)(2) precludes a chapter 13 plan from treating a portion of an *undersecured* creditor's claim as unsecured, where the sole security for the claim is the debtor's principal residence. *Nobelman v. Am. Sav. Bank,* — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Although that decision was widely anticipated for its resolution of what has been a contentious issue, it has, predictably, also spawned a new series of issues as debtors' counsel seek to test its limits. The issue presented here is whether *Nobelman* is applicable when the creditor's claim is wholly *unsecured* following the application of § 506(a).

## BACKGROUND

The debtors commenced this chapter 13 case on September 17, 1992. On May 7, 1993, they filed the instant motion and objection seeking an order determining that claims in excess of the value of their principal residence, and secured by liens on that residence, are "unsecured claims" within the meaning of § 506(a) and may be treated as such in their chapter 13 plan, *see* Rule 3012, Fed.R.Bankr.P., and declaring the liens securing those claims to be void, *see* § 506(d).

The agreed value of the principal residence is $93,000. The Bridgeport Water Pollution Control Authority holds a first priority lien on the residence in the amount of $1,217.97, and Source One Mortgage holds a $92,412.45 first mortgage. The sum of those liens thus exceeds the value of the residence. Respondent Avco Financial Services ("Avco") holds a second mortgage on the residence purporting to secure a claim of $25,566.60. The parties agree that Avco's claim is "secured only by a lien on the debtor's principal residence," in the sense that the mortgage encumbers that residence and no other collateral, but is wholly "unsecured" in the sense that at the commencement of this case, there was no equity to secure Avco's claim.

The sole issue here is whether the debtors may treat Avco's claim as unsecured, notwithstanding the protection from modification provided by § 1322(b)(2). The limited issue addressed in *Nobelman* was "whether § 1322(b)(2) prohibits a chapter 13 debtor from relying on § 506(a) to reduce an *undersecured homestead mortgage* to the fair market value of the mortgaged residence." — U.S. at —, 113 S.Ct. at 2108 (emphasis added). The facts before the Court did not involve a creditor in Avco's position. Because I find, for the reasons that follow, that Avco does not hold a "secured claim," as that term is used in §§ 506(a) and 1322(b)(2), I conclude that the debtors' plan does not impermissibly modify Avco's rights under § 1322(b)(2).

## DISCUSSION

■ As a preliminary matter, because the Supreme Court applied its holding in *Nobelman* to the litigants in that case, this court must apply *Nobelman* to this case in which a confirmation order has not entered, notwithstanding the fact that this case and the instant motion were filed before *Nobelman* was decided. *Harper v. Virginia Dep't of Taxation,* — U.S. —, —, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. —, —, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991) ("[W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata."); *Independence One Mortgage Corp. v. Wicks (In re Wicks),* 5 F.3d 1372 (10th Cir., 1993) (*Nobelman* applied to case pending on appeal).

## I. The scope of the "other than" clause following *Nobelman*

■ Before parsing the language of § 1322(b)(2) and considering its treatment in *Nobelman,* a brief statement of the principles that guide that endeavor is in order. First, it is noted that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Second, while the Supreme Court's interpretation of a code provision is obviously binding upon this court, such an interpretation by the Second Circuit Court of Appeals is also binding, unless and until the latter interpretation is directly reversed or overruled by the Supreme Court. *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1508 (11th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988); *Hammond v. Commonwealth Mortgage Co. of Am. (In re Hammond),* 156 B.R. 943, 947 (E.D.Pa. 1993). This court is therefore bound by and must apply *Bellamy v. Fed. Home Loan Mortgage Corp. (In re Bellamy),* 962 F.2d 176 (2d Cir.1992), except to the extent that it is inconsistent with *Nobelman.*

### A. The structure of § 1322(b)(2)

■ Because I must consider the language of § 1322(b)(2) in some detail, it is useful to assign shorthand references to the four major clauses of that section. Section 1322(b)(2) provides that a chapter 13 plan may:

> modify the rights of holders of secured claims [this will be referred to as the "secured claims" clause], other than a claim secured only by a security interest in real property that is the debtor's principal residence [the "other than" clause], or of holders of unsecured claims [the "unsecured claims" clause], or leave unaffected the rights of holders of any class of claims [the "classification" clause].

A plain reading of the subsection suggests that the other than clause, which contains no verb, could only operate as an exception to the secured claims clause, which it follows. It could not operate as an exception to the clauses it precedes, i.e. the unsecured claims clause and the classification clause. Under that construction, the secured claims clause states the general rule that a plan may modify the rights of holders of secured claims, and the other than clause states the only exception to that rule, i.e. that there are certain holders of secured claims ·whose rights cannot be modified. Put another way, no holder of a claim is protected by the other than clause unless that holder falls within the secured claims clause. Because there is no exception to the unsecured claims clause, the rights of a holder of only an unsecured claim within the meaning of the unsecured claims clause are not protected from modification. That is not to say, however, that a holder must hold *only* a secured claim in order to be protected by the other than clause. As discussed *infra* at pp. 714–15, *Nobelman* teaches that a holder may hold both a secured claim and an unsecured claim and yet still qualify as the holder of a secured claim potentially subject to the protection of the other than clause.

In order to determine whether the above construction is in accord with that afforded § 1322(b)(2) by courts whose decisions are binding on this court, and whether or not Avco qualifies as the holder of any secured claim, within the meaning of the secured claims clause, I must review the holdings in *Bellamy* and determine which, if any, are consistent with *Nobelman.*

### B. *Nobelman*'s effect on *Bellamy*

*Bellamy* held that the term "secured claim" can be construed in two ways. *See* 962 F.2d at 183. First, it may be construed in the "literal" sense, that is, a claim is "secured" if there is a lien which purports to provide security for the claim. That is the way the term is used in § 506(d). *Dewsnup v. Timm,* —— U.S. ——, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). The second way it may be construed is in the "code" sense, that is, a claim is "secured" to the

extent that, after valuing the collateral and subtracting valid superior liens, there actually exists some value to secure the claim; to the extent such value does not exist, the claim is "unsecured." The Court has consistently recognized that the terms "secured claim" and "unsecured claim" are used in the code sense in § 506(a). *See id.,* —— U.S. at ——, 112 S.Ct. at 776–77 (accepting the contention that "under § 506(a), a claim is secured only to the extent of the judicially determined value of the real property on which the lien is fixed...."); *Ron Pair Enterprises, Inc., supra,* 489 U.S. at 239, 109 S.Ct. at 1029 ("Subsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." (footnote omitted)).

*Bellamy* depended on two holdings. First, that the term "secured claims" as used in § 1322(b)(2) had the same meaning as "secured claim" in § 506(a); the term is used in the code sense in both subsections. 962 F.2d at 182–184. The term "unsecured claims" in the unsecured claims clause also retained its § 506(a) meaning. *Id.* at 183. Thus, "whether, and the extent to which, one holds a secured claim must in the first instance be determined according to § 506(a)." *Id.* at 181. The court felt that this was a "harmonious reading of the two Code provisions, [which are] both applicable in Chapter 13 proceedings...." *Id. Bellamy*'s first holding depended in part on the court's finding that *Dewsnup* did not require a literal construction of "secured claims" in § 1322(b)(2). *Bellamy*'s second holding resolved what the court referred to as the real question: "whether the 'rights' to which § 1322(b)(2) refers include the mortgagee's rights concerning its *claim* or its rights with respect to its *secured claim.*" *Id.* at 179. The creditor in *Bellamy* argued that Congress advisedly used the expansive term "claim" in the other than clause because Congress intended to protect the *entire* claim—both the secured and unsecured portions—from modification. *Bellamy* rejected that argument, following *Hougland v. Lomas & Nettleton Co. (In re Hougland),* 886 F.2d 1182, 1184 (9th Cir. 1989), and other cases, and held that "claim" in the other than clause was shorthand for

"secured claim," and thus only the secured claim in the code sense was protected from modification. *Id.* at 180–81.

*Nobelman* affirmed the validity of *Bellamy*'s first holding, but rejected the second.

By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home. Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for petitioners to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that "[s]uch value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest." But even if we accept petitioners' valuation, the bank is still the "holder" of a "secured claim," because petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an "unsecured claim componen[t]" under § 506(a), *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, n. 3, 109 S.Ct. 1026, 1030 n. 3, 103 L.Ed.2d 290 (1989) (internal quotation marks omitted); however, that determination does not necessarily mean that the "rights" the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim....

—— U.S. at ——, 113 S.Ct. at 2110. In the first sentence of that quotation, the Court recognized that the creditor held a *claim secured by a lien* on the residence, i.e. a secured claim in the literal sense, and therefore was the holder of a claim included in the other than clause. But the inquiry did not end there. The Court proceeded to recognize that the creditor before it was also the holder of a secured claim in the code sense, "*because* petitioners' home retains $23,500 of value as collateral" (emphasis added). *Nobelman* thus sanctions the use of § 506(a) in the first instance to determine whether and to what extent a given claim is a secured claim within the meaning of the secured claims clause.

Significantly, and unlike the Fifth Circuit in the decision the Court affirmed, *see Nobleman v. Am. Sav. Bank (Matter of Nobleman)*, 968 F.2d 483, 487 (5th Cir.1992), the Court did not rely on *Dewsnup* to any significant degree. In *Dewsnup*, the court found ambiguity in the language of § 506(d) and looked at pre-code practice to find that Congress intended the literal sense of the term "allowed secured claim" in that instance. —— U.S. at ——, 112 S.Ct. at 778–79.[1] *Nobelman* did not follow *Dewsnup* in holding that the term "secured claims" is used in the literal sense in § 1322(b)(2). The sole citation to *Dewsnup* in *Nobelman* was for the proposition that the creditor and debtor had bargained for certain state law rights as evidenced by the mortgage instrument. *See* —— U.S. at ——, 113 S.Ct. at 2110. The *Nobelman* Court noted that § 506(a) applies in chapter 13 cases "[a]s a general proposition." *Id.*, —— U.S. at ——, 113 S.Ct. at 2109 n. 3. The Court thus did not disapprove of, and indeed its reasoning supports, the use of bifurcation in chapter 13 cases except as to those holders of secured claims whose rights are protected by the other than clause. *See In re Lee*, 156 B.R. 628, 630 & n. 5 (Bankr.D.Minn.1993) (*Nobelman* did not follow the reasoning of *Dewsnup* and does not preclude the bifurcation of an automobile lien in a chapter 13 case); *Hirsch v. Citicorp Mortgage Corp. (In re Hirsch)*, 155 B.R. 688, 689 (Bankr.E.D.Pa. 1993) (*Nobelman* did not rely on *Dewsnup* and "did not hold that a 'strip down' of a mortgagee's lien was not permissible in a Chapter 13 case").

It is also significant that the Court did not adopt the conclusion of the Fifth Circuit that § 506(a) and § 1322(b)(2) were in conflict and that § 1322(b)(2) should prevail as the more specific provision. *Matter of Nobleman, supra*, 968 F.2d at 488. Rather, the Court interpreted the two provisions in such a way as to give effect to each, holding that while it was correct that a portion of the creditor's claim was unsecured under § 506(a), "that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." —— U.S. at ——, 113 S.Ct. at 2110. The Court thus held that while § 506(a) operates to classify claims in chapter 13, the consequences of that classification are determined by those provisions of chapter 13 that deal with the treatment of secured ·and unsecured claims, including § 1322(b)(2) and (5). That approach is consistent with *Bellamy*'s first holding.

That approach is also consistent with the Court's holding in *Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). There, the Court recognized that "[u]nder § 506(b) the holder of an oversecured claim is allowed interest on his claim to the extent of the value of the collateral." *Id.*, —— U.S. at ——, 113 S.Ct. at 2191. The Court "[c]onstru[ed] §§ 506(b) and 1322(b)(5) together" and gave "effect to both" in holding that curing a default under an oversecured mortgage requires the payment of preconfirmation interest on arrearages that are part of the secured claim. *Id.*, —— U.S. at ——, 113 S.Ct. at 2192. The Court thus employed the § 506(a) concept of secured and unsecured claims in determining that the claim at issue was oversecured and in applying a provision that, like § 1322(b)(2), deals with the permissible provisions of a chapter 13 plan.

*Nobelman* clearly overruled *Bellamy*'s second holding:

> Petitioners urge us to apply the so-called "rule of the last antecedent," which has been relied upon by some Courts of Appeals to interpret § 1322(b)(2) the way petitioners favor. *E.g., In re Bellamy*, 962 F.2d 176, 180 (CA2 1992); *In re Hougland*, 886 F.2d 1182, 1184 (CA9 1989). According to this argument, the operative clause "other than a claim secured only by a security interest in . . . the debtor's principal residence" must be read to refer to and modify its immediate antecedent, "secured claims." Thus, § 1322(b)(2)'s protection would then apply only to that subset of allowed "secured claims," determined by application of § 506(a), that are secured by

---

1. Although *Dewsnup* found that "allowed secured claim" was used in the literal sense in § 506(d), the *Dewsnup* majority also stated that it would assign "allowed secured claim" the same meaning it has in § 506(a) were it "writing on a clean slate." —— U.S. at ——, 112 S.Ct. at 778.

a lien on the debtor's home—including, with respect to the mortgage involved here, the bank's secured claim for $23,500. We acknowledge that this reading of the clause is quite sensible as a matter of grammar. But it is not compelled. Congress chose to use the phrase "claim secured ... by" in § 1322(b)(2)'s exception, rather than repeating the term of art "secured claim." The unqualified word "claim" is broadly defined under the Code to encompass any "right to payment, whether ... secure[d] or unsecured" or any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether ... secure[d] or unsecured." 11 U.S.C. § 101(5) (1988 ed., Supp. III). It is also plausible, therefore, to read "a claim secured only by a [homestead lien]" as referring to the lienholder's entire claim, including both the secured and the unsecured components of the claim. Indeed, § 506(a) itself uses the phrase "claim ... secured by a lien" to encompass both portions of an undersecured claim.

— U.S. at ——, 113 S.Ct. at 2111.

That quoted language draws the critical distinction between the code sense and the literal sense of the term "secured claims." Noting that the term "secured claims," which the Court referred to as a "term of art," was not repeated in the other than clause, the Court determined that the phraseology "claim secured ... by a security interest in real property" was used in the literal sense, thus embracing both the secured and unsecured components of the claim.[2] The clear implication is that if Congress had drafted the other than clause to read "other than a *secured* claim secured only by a security interest," etc., then *Bellamy*'s second holding would be correct, so that only the secured claim in the code sense would be protected

from modification. The fact that the Court engaged in this discussion at all demonstrates that the Court assumed that "secured claims" in § 1322(b)(2) was used in the code sense. If "secured claims" meant, as in § 506(d), only whether there existed a security agreement purporting to create a lien on the residence, the rule of the last antecedent argument would have been irrelevant, because in that event, the term "claim" in the other than clause could have referred to its last antecedent, i.e. "secured claims" in the literal sense, without creating any problem of interpretation for the Court.

*Nobelman* read the other than clause as protecting both components of the undersecured claim holder's unified claim. Because § 1322(b)(2) deals with modifying the *rights of holders,* and not with modifying claims, that subsection precludes modification not only of the secured claim, but of the rights— all of the rights—of the holder of the secured claim whose claim is covered by the other than clause. *Nobelman* did not hold that the other than clause applies to the rights of holders other than those holders described in the secured claims clause that precedes it, that is holders of secured claims defined in the code sense; indeed, that issue was not before the Court. The Court simply held that the word "claim" in the other than clause stands by itself, and is not implicitly modified by the word "secured" appearing in the secured claims clause.[3] It is therefore consistent with *Nobelman,* and required by *Bellamy,* to hold that even though Avco's claim is literally within the language of the other than clause, since it holds only a totally unsecured claim in the code sense, § 1322(b)(2) does not protect its rights.

That interpretation of *Nobelman* is supported by the Court's conclusion that § 1322(b)(2) may not be applied in such a

---

**2.** The use of the term "secured claim" as a "term of art," and the use of "lien secured by a claim" or similar language to indicate whether a claim is secured in the literal sense, is consistent with other uses of those terms in the code. *See Dewsnup, supra,* —— U.S. at ——, 112 S.Ct. at 780 (§§ 722, 1225(a)(5) and 1325(a)(5) utilize "allowed secured claim" as a term of art), 782 (§ 506(a), § 362(a)(5) ("to the extent that such lien secures a claim") and § 363(k) ("lien that

secures an allowed claim") are examples of literal use) (Scalia, J., dissenting).

**3.** At least one other court before *Nobelman* had reached a similar construction of the statute. *Matter of Kaczmarczyk,* 107 B.R. 200, 202–04 (Bankr.D.Neb.1989) (§ 1322(b)(2) protects an undersecured claim holder, but not one holding only an unsecured claim under § 506(a)).

way as to modify an undersecured home mortgage lender's rights under state law and its mortgage document, which would inevitably result from the modification of the unsecured claim component of the lender's unified claim. *See* ——— U.S. at ———, 113 S.Ct. at 2111. In arriving at that conclusion the Court recognized that a chapter 13 plan may modify the rights of the holder of an unsecured claim, so long as that unsecured claim has not been bifurcated from an undersecured home mortgage claim. In the Court's view, the unsecured claim component of an undersecured claim cannot be modified without also modifying the secured claim component—a result plainly prohibited by § 1322(b)(2). The problem arises not from the § 506(a) bifurcation, but from the *treatment* of the bifurcated claim in a manner that impermissibly modifies the rights of a secured claim holder with a home mortgage lien. The problem is not applicable to the holder of a claim that is completely unsecured following a § 506(a) analysis, because there is no inconsistency of treatment involved.[4]

It is further noted that the classification clause of § 1322(b)(2) supports the argument that the terms "secured claims" and "unsecured claims" are used in their code sense in § 1322(b)(2). The code does not generally classify creditors based on the existence of a piece of paper purporting to give a creditor rights in specified collateral, but rather on whether a creditor actually holds a claim supported by valuable estate property. *See Bellamy, supra,* 962 F.2d 176, 179, 182–83 (references throughout Senate version of code to secured claims are only to the claim determined to be secured under § 506(a), not to the full amount of the claim).

Avco correctly states that *Nobelman* held that § 1322(b)(2) focused on rights. 113

S.Ct. at 2009. As the holder of a second mortgage, Avco has essentially the same *state law* rights as the holder of a first mortgage, irrespective of the fact that the exercise of those rights may yield a smaller (or in this case, nonexistent) recovery.[5] However, *Nobelman* focused on the rights afforded a mortgagee under state law and the applicable loan documents only *after* noting that the creditor before it was the holder of a "secured claim" in the code sense and thus clearly entitled to the protection of the other than clause. *Nobelman* also recognized that a creditor's state law rights are given full recognition in bankruptcy only "[i]n the absence of a controlling federal rule." *Nobelman, supra,* ——— U.S. at ———, 113 S.Ct. at 2110. Section 1322(b)(2) is such a controlling federal rule in this case, and provides that as Avco does not hold a "secured claim" in the code sense, and is thus not protected by the other than clause, its state law rights may indeed be modified.

I recognize that portions of the *Nobelman* opinion can be read to support Avco's position. That is not surprising, given that the Court was not addressing the specific issue before me today. Taken in the context of the entire decision, however, I believe that the better interpretation is the one I have reached today. Further, as noted, to the extent I can reconcile *Nobelman* with *Bellamy,* I must do so. I note that my interpretation of § 1322(b)(2) and *Nobelman* is in accord with Judge Krechevsky's ruling in *Matter of Plouffe,* 157 B.R. 198, 200 (Bankr. D.Conn.1993) ("I find it evident from the *Nobelman* ruling that for a homestead mortgagee to claim the protection against modification granted by § 1322(b)(2), the mortgagee must qualify as the holder of a secured

---

4. The Court also noted the difficulties in calculating new monthly payments following bifurcation of an undersecured adjustable rate mortgage. *Id.* Again, those difficulties exist only where a plan proposes to treat the bifurcated components of an undersecured claim differently.

5. "'Inherent in a mortgage is the right of the mortgagee to insist upon full payment before giving up his security, but that right is not impaired if the relief afforded accords him full compensation of his mortgage debt.'" *Melrose*

*v. Industrial Assocs., Inc.,* 136 Conn. 518, 522, 72 A.2d 469 (1950) (quoting *New England Mortgage Realty Co. v. Rossini,* 121 Conn. 214, 219, 183 A. 744 (1936)). The *Melrose* court held that under that rule, a court could not permit a receiver to sell property encumbered by first and second mortgages where the second mortgage would not be fully satisfied from proceeds of the sale, thus indicating that second mortgagees have the same rights as first mortgagees in that respect.

claim to some extent as determined by § 506(a)." (footnote omitted)).

## C. Additional Arguments

■ I have concluded that for Avco to be protected by the other than clause, it must first qualify as the holder of a secured claim in the code sense, i.e. under § 506(a). Arguably, Avco is still the holder of a secured claim, albeit a claim with no value under § 506(a), so it may claim the benefit of the other than clause. However, under § 506(a) a creditor holds a secured claim only "to the extent of the value of such creditor's interest in the estate's interest" in the collateral; if there is no value, there is no secured claim. That reading of § 506(a) is consistent with *Nobelman*'s statement that the creditor before it was the " 'holder' of a 'secured claim,' because petitioners' home retains $23,500 of value as collateral." —— U.S. at ——, 113 S.Ct. at 2110.[6]

It might also be argued, with some merit, that the holding in the instant proceeding could result in the rights of a holder of an undersecured claim with only a penny of value being fully protected by the other than clause, while the rights of a holder of a claim which is unsecured by only a penny would be subject to modification. It might seem inappropriate that such an important distinction should depend on the valuation of real property, given that reputable and experienced real estate appraisers can no doubt vary significantly in their estimations of a property's value as of a given date.

The Second Circuit recently addressed the question of the uncertainty of real estate appraisals in *First Brandon Nat'l Bank v. Kerwin (In re Kerwin)*, 996 F.2d 552 (2d Cir.1993). In response to the argument that the valuation of the real property at issue was too speculative to support the adverse treatment the lienholder received on account of that valuation,[7] the court noted:

> Determining the market value of real property is a constant feature in today's commercial world. Such valuations are regularly used by prudent lenders, like the bank, to make business decisions. Although at least one bankruptcy court has found the transfer of a specific parcel of real estate could not satisfy § 1225(a)(5)(B)(ii)'s requirement that it at least equal in value the amount of the claim because the value of the land was too speculative, that does not mean that the valuation of real property will very often be too speculative to provide sufficient safeguards to the debtor or that (B)(ii)'s requirements may not ordinarily be met in the valuation of real property.

996 F.2d at 560 (citation omitted).

Creditors holding claims deemed unsecured under § 506(a) should not be surprised if their rights are subject to modification. Such is the rule in bankruptcy, with the other than clause protecting certain holders of secured claims from such treatment as an exception to the rule. The code frequently protects, modifies, or abrogates important rights based on property valuations, and those valuations are often the key contested issue in reorganization cases. If a plan proposes to distribute $1 less than the allowed amount of a secured claim, determined after a § 506(a) valuation hearing, the plan will fail and the debtor will lose the protection of the automatic stay.[8] *See* §§ 1129(b)(2)(A); 1325(a)(5)(B). Whether and to what extent *any* creditor receives interest on its claim

---

6. If a creditor may hold a secured claim of $0 and retain all the rights of a secured claim holder after application of § 506(a), a creditor deemed fully secured under § 506(a) would also hold an unsecured claim of $0 and would acquire the rights of an unsecured claim holder, such as the right to defeat a plan under which the debtor's disposable income is not fully devoted to the plan, *see* § 1325(b)(1). That result is patently absurd.

7. The court held that § 1225(a)(5)(B) (the text of which is substantially identical to that of § 1325(a)(5)(B)) permitted the distribution to a

secured creditor of real property equal in value to the creditor's allowed secured claim under § 1225(a)(5)(B)(ii), *id.* at 558, and that where that property was distributed on the plan's effective date, the creditor was not entitled to retain its lien on the collateral under § 1225(a)(5)(B)(i), *id.* at 559.

8. *See, e.g., In re Broad Assocs. Ltd. Partnership*, 125 B.R. 707, 715 (Bankr.D.Conn.1991) (denying confirmation of a plan which proposed to pay over 95 percent of the present value of the collateralized portion of an undersecured claim).

under § 506(b), and whether the debtor may use its cash collateral without its consent, depend on the value of the creditor's collateral. *See* § 363(c), (e). Claims secured by any property in chapter 11 cases, and by any property other than the debtor's principal residence in chapter 13 cases, have always been subject to modification, and apparently remain so after *Nobelman.* *See Matter of Kennedy,* 158 B.R. 589, 595–96 (Bankr.D.N.J. 1993) (the absence of a provision comparable to the other than clause in chapter 11 indicates an intent that home mortgagees have no special protection in chapter 11); *680 Fifth Ave. Assocs. v. Mut. Benefit Life Ins. Co. in Rehabilitation (In re 680 Fifth Ave. Assocs.),* 156 B.R. 726, 732 n. 7 (Bankr. S.D.N.Y.1993) (notwithstanding *Nobelman,* lien stripping is still available in chapter 11).

## II. Congressional Intent

Having determined that precedent binding upon this court has interpreted the plain language of § 1322(b)(2) in such a way as to preclude Avco from claiming the protection of the other than clause, it remains to be determined whether that result is demonstrably at odds with the intent of Congress in drafting § 1322(b)(2). *See Lewis v. Grinker,* 965 F.2d 1206, 1223 (2d Cir.1992) (finding " 'rare and exceptional circumstance' where the particular application" of a statute supported by its plain language "would fly in the face of legislative history and would create affirmative harms that Congress ... has continually sought to alleviate.") (citations omitted) (quoting *Ardestani v. I.N.S.,* — U.S. —, —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991)). I conclude that the sparse legislative history regarding the addition of the other than clause to § 1322(b)(2) does not indicate a congressional intent to protect the rights of holders of liens secured by a principal residence from modification where those holders hold only wholly unsecured claims after application of § 506(a).

The only reference to legislative history in *Nobelman* is in Justice Stevens' brief concurrence, which notes simply that "favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." — U.S. at —,

113 S.Ct. at 2112. Significantly, Justice Stevens' comment was intended to explain an apparently anomalous result, i.e. that the code should afford chapter 13 debtors, who would obviously benefit by retaining their homes as they work to fund their plans, less assistance in retaining those homes than their other less essential assets. Justice Stevens' comment emphasizes that the other than clause is an exception to the general scheme of chapter 13.

*Bellamy* concluded that "[t]he legislative history ... indicates only that § 1322(b)(2) was designed to provide greater protection to home mortgage lenders than other secured creditors in the Chapter 13 context." 962 F.2d at 182. That conclusion, however, is "plain on the face of the statute itself." *Id.* *Bellamy* contemplated that a home mortgage lender *did* receive a benefit merely by having modification of the secured portion of its claim prohibited. *Id.* Inasmuch as *Bellamy* found *its* more restrictive reading of § 1322(b)(2) to be consistent with congressional intent to benefit home mortgage lenders, it can hardly be argued that a more expansive interpretation, protecting the entirety of an undersecured home mortgagee's claim and excluding from protection only wholly unsecured home mortgagees, is inconsistent with that intent.

Two conclusions may be drawn from the scant legislative history, both of which support the above interpretation of § 1322(b)(2). First, a key component of House Bill No. 8200 was that undersecured claims would be bifurcated in chapter 13 and that the unsecured portion would be treated like any other unsecured claim.

> Current chapter XIII does little to recognize the differences between the true value of the goods and their value as leverage.... The [new] bill requires the court to value the secured creditor's interest. [fn 47] To the extent of the value of the security interest, he is treated as having a secured claim, entitled to be paid in full under the plan.... To the extent that his claim against the debtor exceeds the value of his collateral, he is treated as having an unsecured claim, and he will receive payment along with all other general unse-

cured creditors.... This is an important departure from a few misguided decisions under current law, under which a secured creditor with a $2000 [claim] secured by household goods worth only $200 is entitled in some cases to his full $2000 claim, in preference to all unsecured creditors. [fn47] ... (proposed 11 U.S.C. 506(a)). The bill departs from current law by permitting a plan to affect debts secured by real property or chattels real.

Unlike current law, H.R. 8200 distinguishes between secured and unsecured claims, rather than between secured and unsecured creditors. ... For the debtor, the determination of the amount of the secured claim facilitates reorganization in the business context, and repayment plans in the consumer context, by defining the precise extent of the claims against the debtor that must be treated specially as secured claims.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 124, 180–81 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5963, 6085, 6141 (certain footnotes omitted).

Second, the other than clause was a compromise between the House and Senate bills, neither of which purported to preclude the modification of the rights of holders of only unsecured claims, regardless of the type of collateral which may have been pledged to secure those claims. The House version of the code, H.R. 8200, completely omitted the other than clause. *See* H.R. 8200, 95th Cong., 1st Sess. (1977), *reprinted in* App. 3 Lawrence P. King, ed., *Collier on Bankrupt-cy* § III, p. 537 (15th ed. 1993) ("the plan may ... modify the rights of holders of secured claims or of holders of unsecured claims"). The Senate version created an exception for all holders of secured claims who also held a mortgage: "the plan may ... modify the rights of holders of secured claims (other than claims wholly secured by mortgages on real property) or of holders of unsecured claims." S. 2266, 95th Cong., 2d Sess. (1978), *reprinted in Collier, supra,* at § VII, pp. 572–73.[9]

Statements by leaders of both the House and Senate described the final version of § 1322(b)(2) as a "compromise agreement." *See* Statement of Congressman Edwards, 124 Cong.Rec. H11089 (Sept. 28, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6436, 6481 ("Edwards Statement"); Statement of Senator DeConcini, 124 Cong.Rec. S17406 (October 6, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6505, 6550 ("DeConcini Statement"). Nothing in those statements suggests that the amendment was designed to change the general rule that the rights of holders of "unsecured claims" in the code sense are subject to modification by a chapter 13 plan. For example, in describing § 1325(a)(5)(B) of the compromise bill, immediately after describing the compromise on the other than clause of § 1322(b)(2), both statements provide: "Of course, the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim

---

9. The section by section analysis of S. 2266 describes § 1322(b)(2) as permitting a plan to "modify the rights of holders of secured and unsecured claims, except claims wholly secured by real estate mortgages." S.Rep. No. 989, 95th Cong., 2d Sess. 141 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5927. In fact, the bill placed the exception after "secured claims," just as the final version of the statute does. Had Congress intended that the § 1322(b)(2) exception apply to holders of completely unsecured claims, it would have used the structure employed in the Senate Report. Additionally, it is noted that the replacement of the word "wholly," which implied that only fully secured claims were protected, with the word "only," which places the focus on the type rather than the value of the security, may provide support for *Nobelman*'s reading of the other than clause to extend to the entirety of an *undersecured* claim. *See In re Strober,* 136 B.R. 614, 622 (Bankr.E.D.N.Y.1992); *In re Reeves,* 65 B.R. 898, 900 n. 3 (N.D.Ill.1986); *but see In re Jones,* 152 B.R. 155, 166 (Bankr.E.D.Mich.1993) (the word "wholly" was deleted as redundant because a "secured claim" is by definition "wholly" secured). That change does not suggest any intent to extend protection to wholly *unsecured* claims. In fact, if the deletion of "wholly" does reflect congressional sensitivity to the distinction between "secured" in the code sense and "secured" in the literal sense, it is all the more likely that Congress consciously excluded holders of "unsecured" claims (in the code sense) from the protection of the other than clause by placing that clause after the secured claims clause but before the unsecured claims clause.

the creditor's lien will have been satisfied in full." Edwards Statement, 1978 U.S.Code Cong. & Admin.News at p. 6482; DeConcini Statement, *id.* at 6551. As Congress intended unsecured claims to be subject to modification in chapter 13, it must be presumed that had it intended to make the other than clause an exception to that general rule, it would have placed that clause *after* both the secured claims clause and the unsecured claims clause.

In view of chapter 13's rehabilitative purpose, the legislative history provides no justification for extending § 1322(b)(2)'s protections to holders of unsecured claims when neither the statutory language nor *Nobelman* supports that result. Indeed, such an interpretation might induce more debtors who would qualify for chapter 13 relief to file chapter 11 cases, in which all unsecured claims may be treated as such, a more expensive and less expeditious alternative.[10]

It is of course possible that Congress never considered that a creditor could hold a security interest (as opposed, for example, to a judicial lien) in real property that is the debtor's principal residence, and yet not be the holder of at least some "secured claim" in the code sense. It is possible that, had that eventuality been brought to its attention, Congress would have moved the other than clause to follow both the secured claims

clause and the unsecured claims clause, to make it clear that such a creditor should be protected. It is, however, more likely that Congress would have left the statute precisely the way it is presently worded, and thus reinforced its intent that the rights of a creditor holding only an unsecured claim are not protected from modification. I find no legislative history that persuades me that § 1322(b)(2) was intended to protect Avco's asserted rights.[11]

### III. Avoidance of Avco's Lien

The parties have not raised the issue of whether Avco's lien may be declared void in view of my determination that its claim is unsecured under § 506(a). The order affirmed in *Bellamy* voided the lien purporting to secure the unsecured portion of the bifurcated claim at issue there. *See* 962 F.2d at 178; *In re Leibowitz,* 147 B.R. 341, 344, 345 (Bankr.S.D.N.Y.1992) (*Bellamy* and § 506(d) require the voiding of a lien purporting to secure a claim deemed wholly unsecured pursuant to § 506(a)). *Nobelman* did not address the issue of whether § 506(d) may operate in chapter 13 to void a lien securing a claim deemed unsecured under § 506(a). The law of the Second Circuit therefore remains that § 506(d) does operate to void such a lien.[12]

---

**10.** It is noted that in a chapter 11 case, a creditor in Avco's position would probably not be able to elect to have its entire claim treated as a secured claim under § 1111(b), because its interest in estate property is of inconsequential value. *See* § 1111(b)(1)(B)(i); *In re Union Meeting Partners,* 160 B.R. 757, 773 (Bankr.E.D.Pa.1993).

**11.** Some courts have suggested that Congress added the other than clause in an apparent response to the complaints of home mortgage industry lobbyists. *See, e.g., Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236, 245–46 & n. 13 (5th Cir.1984) (noting appearances at Senate hearings by advocates representing positions of banks, savings and loan associations and real estate investment trusts); *In re Strober,* 136 B.R. 614, 620–21 (Bankr.E.D.N.Y.1992). Statements made at committee hearings by individuals who are not members of Congress and which were not included in official congressional reports should be afforded no significance in interpreting a statute. *Kelly v. Robinson,* 479 U.S. 36, 51 n. 13, 107 S.Ct. 353, 362 n. 13, 93 L.Ed.2d 216

(1986). Moreover, there is no suggestion that Congress intended to protect completely unsecured home mortgage claims. *Cf. In re Shaffer,* 84 B.R. 63, 66 (Bankr.W.D.Va.) ("It is hardly conceivable that Congress could have intended that Section 1322 protect subordinate fourth or fifth or sixth liens which in fact may totally lack equity security in the property."), *aff'd in relevant part sub nom. Capitol Credit Plan of Tennessee, Inc. v. Shaffer,* 116 B.R. 60 (W.D.Va.1988), *appeal dism'd,* 912 F.2d 749 (4th Cir.1990).

**12.** I note that courts in other circuits have relied on *Bellamy* in holding that in chapter 13 a lien securing a claim deemed unsecured under § 506(a) is void under § 506(d). *See, e.g., Richards v. Citicorp Mortgage, Inc. (In re Richards),* 151 B.R. 8, 17 (Bankr.D.Mass.1993). Some courts have held that the lien may not be avoided, *see, e.g., Zablonski v. Sears Mortgage Corp. (In re Zablonski),* 153 B.R. 604, 606 (Bankr.D.Mass. 1993), or may be avoided only when all plan payments have been made, *see, e.g., In re Jones,* 152 B.R. 155, 182 (Bankr.E.D.Mich.1993). *Bellamy* sanctions neither approach.

## ORDER

The debtor's objection to Avco's claim is sustained. It is determined that Avco is the holder of an unsecured claim which may be modified by the debtor's plan, and that Avco's lien on the debtors' residence is void, and IT IS SO ORDERED.