**In re John CAVALIERE and Kathleen Cavaliere, Debtors.**

**Bankruptcy No. 95–50822.**

United States Bankruptcy Court, D. Connecticut.

April 1, 1996.

---

1. Other creditors are owed approximately $34,-000.

James G. O'Rourke, Stratford, Connecticut, for Debtors.

Jeffrey L. Sapir, White Plains, New York, Chapter 13 Trustee.

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS UNDER CODE § 109(e) AND DETERMINE STATUS OF CLAIMS UNDER CODE § 506(a)

ALAN H.W. SHIFF, Chief Judge.

The chapter 13 trustee has filed a motion to dismiss this case under § 1307(c) [1] because the debtors scheduled secured debt in excess of the amount permitted by § 109(e). In response, the debtors filed a motion to determine the status of claims under § 506(a) so that they will be eligible under § 109(e). They contend that they are eligible chapter 13 debtors because their proposed order under § 506(a), if granted, would reduce the amount of their secured debt. They then argue that the claims corresponding to the resulting unsecured debt should be disallowed as unenforceable under § 502(b)(1) because their personal liability for that debt had been discharged by a prior chapter 7 discharge and is not owed.

### BACKGROUND

On July 16, 1993, the debtors commenced a case under chapter 7. They received a discharge of their dischargeable debts on November 4, 1993. *See* 11 U.S.C. §§ 524 and 727. On June 2, 1995, they filed this chapter 13 case. On June 9, 1995, the debtors filed a plan and schedules. Schedule A (Real Property) stated that the debtors' residence had a market value of $350,000.00. That amount has not been challenged by the trustee. Schedule D (Creditors Holding Secured Claims) listed 28 items aggregating claims in excess of $1,658,000.00. On June 14, 1995, the chapter 13 trustee filed a motion to dismiss claiming:

---

**1.** Section 1307(c) provides:

... on request of a party in interest ... and after notice and a hearing, the court may ... dismiss a case under this chapter ... for cause....

11 U.S.C. § 1307(c). The trustee does not specifically designate § 1307(c) as the statutory predicate for his motion. It is assumed, however, that the trustee seeks dismissal under that section "for cause," i.e. that the debtor's are ineligible debtors under § 109(e). See text of §§ 109(e) and 506(a) *infra* at p. 6.

That these debtors do not qualify for Chapter 13 protection pursuant to Bankruptcy Code Section 109(e) in that they list secured debt of $1,658,138.49. As such they exceed the statutory limit of Chapter 13.[2]

*Motion to Dismiss,* p. 1. On June 16, 1995, the debtors filed a First Amended Plan which provided, *inter alia,* for the payment in full of unsecured priority claims, ¶ 2a; payment of a $26,660.00 arrearage due to People's Bank as the holder of an allowed secured claim, ¶ 2b; and further provided that:

> The following lien claims shall be *deemed to be unsecured by virtue of 11 U.S.C. ... 506(a).* Lien of $90,000.00 held by People's Bank.
>
> .     .     .     .     .

Unsecured claims, including the foregoing liens *deemed to be unsecured by virtue of 11 U.S.C. ... 506(a),* shall be paid ... not less than 10%.... The total of all ... proposed ... claims is $9,000.00.

*First Amended Plan of Reorganization,* ¶ 2d (emphasis added).[3]

On June 16, 1995, the debtors also filed a First Amended Schedule D which listed creditors holding secured claims of $1,648,120.50; without duplication that amount is reduced to $1,185,620.50.[4] On June 20, 1995, the debtors filed a motion for a determination of the status of claims under § 506(a). At a January 11, 1996 hearing on that motion and the trustee's § 1307(c) motion, debtors' counsel stated that the following creditors held claims that were secured only by the debtors' principal residence, *see* 11 U.S.C. § 1322(b)(2):

| | |
|---|---:|
| 1. People's Bank, mortgage ("People's I") | $390,000.00 |
| 2. Trumbull tax collector, sewer lien | 500.00 |
| 3. Founder's Bank, second mortgage | 185,000.00 |
| 4. Robert Noel, judgment lien | 24,148.14 |
| 5. American Rental, judgment lien | 422.96 |
| 6. First Constitution Bank, judgment lien | 107,990.41 |
| 7. FDIC for Centerbank, judgment lien | 92,121.49 |
| 8. Union Trust, judgment lien | 55,872.94 |
| 9. State of Connecticut, tax lien | 5,458.68 |
| 10. Shawmut Bank, judgment lien | 144,173.40 |
| 11. Water Pollution Control Authority of New Haven, judgment lien | 847.60 |
| 12. Christopher John Wall, judgment lien | 3,899.22 |
| 13. Chase Manhattan Bank, judgment lien | 34,610.30 |
| 14. Bank of Boston Connecticut, judgment lien | 35,687.63 |
| 15. Jesse Hopkins, judgment lien | 559.29 |
| 16. Norwalk Hospital Association, judgment lien | 461.80 |
| 17. People's Bank, second mortgage ("People's II") | 90,996.42 |
| | $1,172,750.28 |

In addition, the debtors' scheduled two claims secured by personal property on their First Amended Schedule D in the aggregate amount of ............ 18,328.90

Accordingly, the total amount of the secured claims at the commencement of this case is calculated to be ........................................ $1,191,079.18

---

**2.** Prior to the Bankruptcy Reform Act of 1994, the maximum limits of secured and unsecured debt were $350,000.00 and $100,000.00 respectively. *See* 11 U.S.C. § 109(e), Reform Act of 1978.

**3.** The plan does not state to which of the People's Bank mortgages the arrearage payment in ¶ 2b is attributed. Likewise, the plan does not identify the People's Bank claim in ¶ 2d. However, since the debtors claim that the 1994 mortgage is wholly unsecured, I attribute the arrearage referred to in ¶ 2b to the August 4, 1987 mortgage and the lien referred to in ¶ 2d to the July 29,

1994 mortgage. As noted in the text, the August 4, 1987 mortgage in the face amount of $390,-000.00 will be referred to as People's I, and the July 29, 1994 mortgage, apparently in the face amount of $90,000.00, will be referred to as People's II.

**4.** The debtors' Schedule D listed both prejudgment real estate attachments obtained pursuant to state law, *see* Conn.Gen.Stats. § 52–278 (1995 Rev.) *et seq.,* and the subsequent judgment liens arising from the same debts. Thus, some debts were scheduled and added to the total twice.

All of those claims and corresponding debts except item 17 were obtained prior to the chapter 7 discharge, and all but items 1 and 17 were listed as disputed, contingent, unliquidated joint debts.

The debtors' § 506(a) motion states that the market value of their residence is $350,-000.00 and lists creditors claiming security interests in that property. The corresponding proposed order (the "§ 506 Order") seeks, *inter alia*, a determination that:

> 1.a. The secured interest of [People's I] is an allowed secured claim in the amount of $390,000.00.
>
> 1.b. The secured interest of the Trumbull Tax Collector is an allowed unsecured priority claim in the amount of $3,289.91.[5]
>
> 1.c. The secured interest of [People's II] is an allowed unsecured claim in the amount of $90,000.00.[6]
>
> 1.d. That all other secured interests as described [in the § 506(a) motion, attached Schedule D and § 506 Order] are not allowed unless determined to be so under 11 U.S.C. §§ 501 and 502.[7]

Thus the § 506 Order bifurcates the allowed secured claims of $1,191,079.18 into a secured claim of $390,000.00 and unsecured claims of $801,079.18 of which the other interests identified in ¶ 1d total $691,253.80 ("the Other Claims")[8].

The pivotal issue raised by the proposed use of § 506(a) is whether the protection of a chapter 7 discharge extends to claims arising from an order under that section in a subsequent chapter 13 case. Tailored to this case, the issue is whether the chapter 7 discharge extends to the Other Claims and that in turn depends on whether the Other Claims are disallowed as unenforceable under § 502(b)(1).

## DISCUSSION

Code § 109(e) provides:

> Only an individual with regular income ... and such individual's spouse ... that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000.00 and noncontingent, liquidated, secured debts of less than $750,000.00 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (West 1995).

Code § 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation
>
> ....

11 U.S.C. § 506(a) (West 1995).

### THE OTHER CLAIMS ARE ALLOWED, ENFORCEABLE, AND OWED

At the commencement of this case, the debtors had secured debt in the amount of

---

5. This secured interest is listed as a sewer lien in the amount of $500.00 on Schedule D. A copy of that schedule was attached to the debtors' motion. The debtors' First Amended chapter 13 Plan listed $3,289.91 as due to the Trumbull Tax Collector as a priority under § 507.

6. The § 506(a) motion and proposed order and the First Amended Plan state that the amount of this debt is $90,000.00. Schedule D states that it is $90,996.42. It is assumed that the difference represents interest.

7. On June 23, 1995, People's Bank filed an objection to the debtors' First Amended Plan claiming that § 1322(b) prohibited the modification of its

rights as a holder of an allowed secured claim. That objection fails to recognize this court's decision in *In re Hornes*, 160 B.R. 709 (Bankr. D.Conn.1993) that § 1322(b) does not protect the rights of a holder of a claim which is totally unsecured in the code sense, *see* n. 9 *infra*. It is noted that People's II is wholly unsecured.

8. *This amount is derived from the addition of* claims 3 through 16 listed on p. 9, *supra*. It is noted that ¶ 1d of the § 506 Order describes the interests as "secured" in the literal sense, *see* n. 9 *infra*. It is assumed that the debtors employed that classification to refer to the secured claims listed in their motion, attached Schedule D and § 506 Order, but they intend to treat those claims as disallowed unsecured claims.

$1,191,079.18 of which $710,082.76 was scheduled as contingent and unliquidated. It is noted, however, that the debtors have abandoned any claim that that designation eliminates those debts for eligibility purposes.

> The debtor[s do] not argue that because [they] list claims as contingent and unliquidated that they are so, but rather that the debtor[s have] no liability on these claims, i.e., there is no debt.

Debtor's *Memorandum of Law in Opposition of Trustee's Motion to Dismiss*, October 2, 1995 at p. 2.

The § 506 Order treats People's I as an allowed secured claim of $390,000.00 even though the residence had a value of $350,000.00. That is because the Supreme Court in *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) held that § 1322(b)(2) protects the rights of holders of allowed secured claims who are secured only by a security interest, in the literal sense,[9] in a debtor's principle residence. The § 506 Order treats People's II as an "allowed unsecured claim" because that mortgage arose subsequent to their chapter 7 discharge. The debtors then seek a determination that the Other Claims "are not allowed unless determined to be so under §§ 501 and 502." *See § 506 Order* ¶ 1d.

■ A chapter 7 discharge "extinguishes only 'the personal liability of the debtor'. . . . [T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. · 2150, 2153, 115 L.Ed.2d 66 (1990). The Court further held that the surviving mortgage interest is a "claim" subject to inclusion in a chapter 13 case, and is "an 'enforceable obligation' of the debtor."[10] *Id.* at 84, 111 S.Ct. at 2154. It follows then that the Other Claims survived the discharge and are enforceable obligations in this chapter 13 case.

■ In chapter 13 cases where, as here, bifurcation is permissible, *see Nobelman*, 508 U.S. at 328, n. 3, 113 S.Ct. at 2109, n. 3, § 506(a) permits a debtor to divide allowed secured claims into secured claims and unsecured claims. *See also, Hornes*, 160 B.R. at 713. The debtors seek the § 506 Order because without it the surviving claims, including the Other Claims, are far in excess of the secured debt limit prescribed by § 109(e). They do not argue that they do not "owe" the surviving secured debt. Indeed, their proposed order refers to all but the Other Claims as allowed. Instead, they propose to use § 506(a) to redefine the allowed secured claims so that People's I ". . . is an allowed secured claim in the amount of $390,000.00 . . . [and the Other Claims] are not allowed claims unless determined to be so under 11 U.S.C. Section 501 and 502." *§ 506 Order* ¶¶ 1a and d.

The flaw in that proposal is that it overlooks the fact that claims resulting from a § 506(a) order arise by operation of law, not because a proof of claim was filed under § 501. Even if the Other Claims were subject to allowance or disallowance under § 502, the result the debtors seek would not follow unless they filed an objection under. Rule 3007 Fed.R.Bankr.P. No such objection has been filed in this case. Moreover, any such objection would fail.

Section 502 states in relevant part that a claim is allowed under § 502(b) except to the extent that it is "unenforceable against the debtor and the property of the debtor, under any agreement or applicable law. . . ." 11 U.S.C. § 502(b)(1). The allowed secured claims that survived the debtors' chapter 7 discharge did not arise from any nonrecourse

---

9. *See also In re Hornes*, 160 B.R. 709 (Bankr. D.Conn.1993). In *Hornes*, I noted that the term "secured claim" may be construed in two ways. First, it may be construed in the "literal" sense, that is, a claim is "secured" if there is a lien which purports to provide security for the claim. Second, it may be construed in the "code" sense, that is, a claim is "secured" to the extent that, after valuing the collateral and subtracting valid superior liens, there actually exists some value to secure the claim. To the extent such value does

not exist, the claim is "unsecured." 160 B.R. at 711–12. I will use the same distinction here.

10. As the Court noted ". . . 'debt' which is defined under the Code as 'liability on a claim', 11 U.S.C. § 101(12) (1988 ed. Supp. III) has a meaning coextensive with that of 'claim' as defined in § 101(5)." 501 U.S. at 85, n. 5, 111 S.Ct. at 2154, n. 5.

agreements.[11] If any did, the use of § 502(b)(1) might protect a debtor from liability on the unsecured claims created under § 506(a):

> Ordinarily, a secured creditor who has advanced funds on a full recourse basis also would have an unsecured claim to the extent that the value of its secured claim exceeded the value of the debtor's interest in the collateral. However, section 502(b)(1) operates to disallow the unsecured or deficiency claim of such a creditor when the financing that provides the basis for the claim was advanced on a nonrecourse basis.

*Liona Corp., Inc. v. PCH Associates (In re PCH Associates)*, 949 F.2d 585, 604 (2d Cir. 1991) (citations omitted).

The words "applicable law" in the context of § 502(b)(1) generally refer to federal or state nonbankruptcy law. *See e.g. Morgan v. Manhattan Woods Golf Club, Inc. (In re Manhattan Woods Golf Club, Inc.)*, 192 B.R. 80, 84 (S.D.N.Y.1996) (applying "applicable" state law to disallow a bankruptcy claim); *Scherling v. Hellman Electric Corporation (In re Westchester Structures, Inc.)*, 181 B.R. 730 (Bankr.S.D.N.Y.1995). *See also* King, Lawrence P., *Collier on Bankruptcy*, ¶ 502.02 at p. 502–24 (15th ed. 1996) ("Typical of claims which would be disallowed because unenforceable against the debtor under applicable law included claims unenforceable because grounded in usury, unconscionability, or failure of consideration and the like.") The debtors argue that "applicable law" also includes the bankruptcy code sections under which they obtained a discharge, i.e. §§ 524 and 727, and there is authority for including bankruptcy law within the meaning of the applicable law reference in § 502(b)(1). *See In re Gray*, 174 B.R. 228 (Bankr.E.D.Ky. 1994); *In re Turner*, 157 B.R. 904, 911 (Bankr.N.Ala.1993); *In re Brentwood Outpatient Ltd.*, 134 B.R. 267, 269 (Bankr. M.D.Tenn.1991) *aff'd*, 152 B.R. 727 (M.D.Tenn.1993), *aff'd in part, rev'd in part*, 43 F.3d 256 (6th Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 1824, 131 L.Ed.2d 745 (1995). But that begs the question. If §§ 524 and 727 are within the meaning of applicable law for the purpose of disallowance of a claim, so are §§ 109(e) and 506(a) for the purpose of determining whether claims should be included in the eligibility issue raised here. "Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme...." *United Savings Assn. v. Timbers of Inwood Forest*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). Considering those sections in the context of a holistic analysis of the purpose and limitations of bankruptcy under the Code, I conclude for the reasons that follow that the Other Claims are enforceable.

■ The debtors contend that as a consequence of § 506(a), the Other Claims are unsecured which then must be disallowed under § 502(b)(1) because their personal liability for the corresponding debts was discharged in their prior chapter 7 case. But the Other Claims would come into existence for the first time upon the entry of the § 506 Order, i.e. they exist by operation of law. Before that order, there were no unsecured Other Claims. As noted, the debtors' First Amended Plan states that as a result of a § 506 Order, People's II "shall be *deemed* to be an allowed unsecured claim in the amount of $90,000.00" (emphasis added). *See also* ¶¶ 1a, b, and c of the § 506 Order. The question is whether the Other Claims are vulnerable to disallowance under § 502(b)(1).

The chapter 7 discharge did indeed protect the debtors from personal liability on claims scheduled in that case. As the Court observed in *Johnson, supra*, "[i]nsofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan." *Id.* at 86, 111 S.Ct. at 2155. So, when a debtor files a chapter 13 petition after a chapter 7 discharge, as permitted by *Johnson*, that protection is still effective. That result would not follow, however, if an al-

---

**11.** No evidence has been offered to prove that any of the Other Claims arose from a nonrecourse agreement.

lowed secured claim is redefined under § 506(a) and the resulting unsecured claim is not disallowed under § 502(b)(1).

The debtors argue that the application under § 502(b)(1) of §§ 109(e) and 506(a) in this chapter 13 case to disallow the protection of §§ 524 and 727 in their chapter 7 case would improperly give recourse to creditors who neither bargained for nor have by applicable law any such right. I disagree.

As noted, § 502(b)(1) provides that a claim that it is unenforceable under any agreement or nonbankruptcy applicable law is not allowed, i.e. federal law recognizes such agreements and nonbankruptcy laws. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). So, such a claim which survives a chapter 7 discharge and which is deemed to be unsecured under the § 506 Order would be unenforceable by operation of § 502(b)(1). *See In re PCH Associates,* 949 F.2d at 604. But if, as here, there is no such agreement or nonbankruptcy law, then the unsecured debt arising out of the § 506(a) Order must be allowed under § 502(b)(1) because of the operation of applicable bankruptcy law, i.e. §§ 506(a) and 109(e) which would preempt §§ 524 and 727. The unsecured debt arising out of the § 506(a) Order would exceed the debt limitation imposed by § 109(e) which is a specific statement of federal policy that restricts bankruptcy protection to a limited class of eligible debtors. *In re Toronto,* 165 B.R. 746, 754 (Bankr.D.Conn.1994) ("... the § 109(e) unsecured debt limitation ... include[s] claims deemed unsecured by operation of the code ..."). *See infra* at 13–14. The debtor cannot use bankruptcy law, i.e., §§ 524 and 727, to nullify the bankruptcy policy codified by § 109(e).

Accordingly, I conclude that the Other Claims are allowed unsecured claims, enforceable, and owed by the debtors.

### THE EFFECTIVE DATE OF A § 506(A) DETERMINATION

■ The timing of a § 506(a) valuation is, as the provision provides, "determined in light of the purpose of the valuation ...".

.A § 506(a) valuation hearing may be held at any time during the pendency of a case. See Rule 3012 Fed.R.Bankr.P. Such a hearing may be conducted for several purposes ... For example, that section may be used to determine chapter 13 eligibility, see § 109(e).... The purpose of the valuation dictates its timing. So, if the purpose is to determine chapter 13 eligibility, the valuation should be made as of the petition date....

*In re Stanley,* 185 B.R. 417, 423 (Bankr. D.Conn.1995). In *In re Toronto,* 165 B.R. 746 (Bankr.D.Conn.1994), this court concluded

'It is now settled law that pursuant to 11 U.S.C. § 506(a), the secured debt above the value of the security should be included as an unsecured debt in the calculation of the $100,000.00 [now $250,000.00] unsecured debt limitation under 11 U.S.C. 109(e).' Applying § 506(a) to § 109(e) 'avoid[s] the temptation to raise form over substance' by determining the true amount of secured and unsecured debt that existed on the petition date.

Most courts have held that § 506(a) should be applied for the purpose of determining the amount of the secured and unsecured debts that were owed on the petition date.

*Id.* at 754–55 (citations omitted); *see also In re Prosper,* 168 B.R. 274 (Bankr.D.Conn. 1994).

Since at the commencement of this case, the amount of secured debt exceeded the permissible limits decreed by § 109(e), it is apparent that the purpose of the § 506(a) valuation was to reduce the amount of that debt for eligibility purposes. Accordingly, I conclude that the debts corresponding to the Other Claims which resulted from that valuation were owed unsecured debt as of the date of the commencement of this case. Thus, the Other Claims which aggregate $691,253.80 exceed the § 109(e) unsecured debt limit.

### POLICY

The *Johnson* Court noted that "Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7

relief." *Johnson,* 501 U.S. 78, 87, 111 S.Ct. 2150, 2156. Obviously that observation does not write § 109(e) out of the code. "The § 109(e) dollar limitations ... demonstrate a congressional intent to limit chapter 13 relief to the individual or sole proprietor with no more than a designated amount of unsecured debt." *In re Prosper,* 168 B.R. at 278 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 319–320 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5787, 5963, 6276–6277). *See also Johnson, supra* at 82, 111 S.Ct. at 2153. The Reform Act of 1994, which raised the eligibility levels, does not invalidate that intent. Further, "[t]he specificity of those limitations reflects a congressional intent that they be strictly applied." *In re Toronto, supra* at 753 (citing *In re Cronkleton,* 18 B.R. 792, 793 (Bankr.S.D.Ohio 1982)).

While serial filings are permitted in appropriate circumstances, nothing in *Johnson* or elsewhere leads to the conclusion that a chapter 7 filing can be used to create eligibility for otherwise ineligible debtors. A contrary result would encourage trafficking in chapters in order to achieve a result specifically forbidden in both chapter 7 [12] and chapter 13.

At the hearing on these motions, the debtors' counsel conceded that under his analysis, any debtor who owed more secured debt than was permitted for chapter 13 eligibility could use § 506(a) to nullify the § 109(e) eligibility restrictions:

> The Court: As a matter of policy and statutory construction, can a person eliminate the statutory barrier to filing that appears in § 109(e) by simply eliminating unsecured debt by filing a Chapter 7 case first?
>
> Counsel: Yes, he can.
>
> The Court: So if a person could do that, he could "write out" that congressional barrier, right?
>
> Counsel: Yes.

---

12. *See Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (the Supreme Court determined that a lien could not be "stripped down" in a chapter 7 case through the use of § 506(a) and (d)). The Court noted that "[a]ny increase over the judicially determined valuation

*Transcript, court proceedings, January 11, 1996.*

The conclusions reached in this decision may thwart the debtors' attempt to save their residence from foreclosure. Secured creditors may be treated better under the debtors' First Amended Plan than after the dismissal of this case. Both of those results are contrary to the policy goals Congress intended chapter 13 to serve. But before those chapter 13 goals may be achieved, the prospective beneficiary must be eligible for chapter 13 relief. Congress did not intend to make chapter 13 available to all debtors and instead erected an eligibility gate to exclude those who owed debts over prescribed limits. Congress, not this court, is the gatekeeper.

### ORDER

For the foregoing reasons, the debtors' § 506(a) motion is denied, and it is

FURTHER ORDERED that the Trustee's motion to dismiss is Granted.

during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain." *Id.* at 417, 112 S.Ct. at 778.