John **CAVALIERE** and Kathleen Cavaliere, Appellants,

v.

Jeffrey L. **SAPIR**, Chapter 13 Trustee, Appellee.

Civ. No. 3:96CV833 (JBA).

United States District Court, D. Connecticut.

May 30, 1997.

James G. O'Rourke, O'Rourke, O'Rourke & Berlin, Stratford, CT, for John & Kathleen Cavaliere.

Vanessa L. Bryant, Hawkins, Delafield & Wood, Hartford, CT, for Jeffrey L. Sapir.

Jeffrey L. Sapir, White Plains, NY, pro se.

*Ruling on Appeal from Decision by United States Bankruptcy Court*

JANET BOND ARTERTON, District Judge.

This is an appeal from the dismissal of the Chapter 13 case of the debtors-appellants John and Kathleen Cavaliere ("debtors"). *See In re Cavaliere,* 194 B.R. 7 (Bankr.Conn. 1996). The dismissal was granted pursuant to the motion of the appellee Chapter 13 trustee ("trustee") on the grounds that the debtors' debt exceeded the limits permitted in a Chapter 13 action under 11 U.S.C. § 109(e). The debtors contend that the bankruptcy court erred in calculating their debt under § 109(e) by taking into account certain debts discharged in a previous Chapter 7 action.

## Background

On July 16, 1993, the debtors commenced a bankruptcy case under Chapter 7, which resulted in a discharge of their dischargeable debts four months later. On June 2, 1995, the debtors commenced the present case under Chapter 13. The debtors' filings indicate that the market value of their home was $350,000; the total value of secured claims was $1,191,079.18, of which $1,172,750.28 was secured by the home; and all but $90,996.42 of the secured claims predated the Chapter 7 discharge. The trustee moved to dismiss in light of § 109(e), which limits Chapter 13 to debtors with noncontingent, liquidated, *secured* debts of less $750,000, and noncontingent, liquidated *unsecured* debts of less than $250,000.

■ Subsequent to the trustee's motion, the debtors moved for a determination of the status of claims under § 506(a) which provides as follows:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

The bankruptcy court determined that the § 506(a) motion should be addressed in conjunction with the motion to dismiss.[1] With respect to debt secured by the house, the court deemed only $390,000 to be secured under § 506(a).[2] The remainder of the debt was deemed to be unsecured. Although this determination brought the debtors within the § 109(e) limitations on secured debt, the bankruptcy court concluded that the debtors were simultaneously moved out of compliance with the limitations on unsecured debt. Accordingly, the court granted the trustee's motion to dismiss.

## Discussion

■ The debtors' argument in the present appeal is simple. of the claims deemed unsecured pursuant to § 506(a), $691,253.80 predated the Chapter 7 discharge. Although liens may pass through Chapter 7 undisturbed, a discharge serves to eliminate the

---

1. This decision is not challenged in the present appeal, and appears to be consistent with the great majority of prior cases concerning the interplay of § 506(a) and § 190(e). *See, e.g., Miller v. United States,* 907 F.2d 80, 82 (8th Cir.1990); *In re Prosper,* 168 B.R. 274, 277–80 (Bankr.Conn. 1994).

2. This amount reflects the debtors' first mortgage. Although $390,000 exceeds the market value of the house, the undersecured portion of the mortgage may not be "stripped down" under the Supreme Court's holding in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In contrast to liens that are merely partially unsecured, as is the debtors' first mortgage, liens that are wholly unsecured may be stripped. *See, e.g., In re Hornes,* 160 B.R. 709 (Bankr.Conn.1993); *In re Plouffe,* 157 B.R. 198 (Bankr.Conn.1993).

debtor's personal liability for the debt. *See Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Therefore, the debtors argue that by the time the present Chapter 13 action was commenced, the $691,253.80 of discharged claims were enforceable only through an *in rem* action against the debtors' home, but the claims were not enforceable against the debtors personally. *See id.* at 86, 111 S.Ct. at 2155 ("Insofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan."). Then, pursuant to the § 506(a) determination, the claims were deemed unsecured, precluding enforcement of the liens. What remained was, in effect, an unsecured nonrecourse loan. Under § 502(b)(1), a claim is not allowed if it is "unenforceable against the debtor and the property of the debtor, under any agreement or applicable law." Therefore, the debtors conclude, the $691.253.80 of discharged claims should have been disallowed as unenforceable against either the debtors (pursuant to the discharge) or their property (pursuant to the § 506(a) determination), and not counted towards either the secured or the unsecured debt limits of § 109(e). Such disallowance would have brought the debtors into compliance with the Chapter 13 jurisdictional requirements.

Although few published cases address the interplay of § 506(a), § 502(b)(1), and the Chapter 7 discharge mechanism, at least three prior decisions from this district, including one by this Court, have accepted the reasoning advanced by the debtors. *See EMC Mortgage Corp. v. Quast,* Civ. No. 3:94cv1919(JBA) (D. Conn. filed Jan. 31, 1997) (Arterton, J.) (affirming decision by Krechevsky, J.); *In re Winder,* 171 B.R. 728, 731 n. 5 (Bankr.Conn.1994) (Dabrowski, J.). Other than the decision at issue in the present appeal, the Court has been provided with no contrary authority.

The trustee argues that the debtors misstate the effect of the § 506(a) determination. While the trustee concedes that the Chapter 7 discharge eliminated the debtors' personal liability with respect to the discharged debt, the trustee suggests that the § 506(a) determination actually restored the unsecured aspect of the debt. In other words, the trustee views § 506(a) as a two-step process: first, the court removes an undersecured secured debt; then, "by operation of law," a new unsecured debt, equal in amount to the lien that has been effectively stripped, is imposed. However, the Court finds no case law, other than the decision below, in support of the trustee's interpretation. Indeed, the Second Circuit takes a rather different view of § 506(a). Under the trustee's two-step approach, any type of nonrecourse debt going through the § 506(a) process would be transformed into an enforceable unsecured debt. Yet, the Second Circuit has observed that sections 506(a) and 502(b)(1) operate to disallow undersecured claims of "a creditor when the financing that provides the basis for the claim was advanced on a nonrecourse basis." *In re PCH Associates,* 949 F.2d 585, 604 (2d Cir.1991). The Second Circuit was plainly of a mind that a nonrecourse debt deemed unsecured under § 506(a) was unenforceable within the meaning of § 502(b)(1). The Court has been offered no reason in this regard to distinguish between debts without recourse by virtue of an agreement and debts without recourse by virtue of a Chapter 7 discharge.

In the alternative, the trustee argues that, even if the unsecured discharged debts were unenforceable, they would nonetheless not be disallowed under § 502(b)(1), which disallows only those claims that are "unenforceable against the debtor and the property of the debtor, under any agreement or applicable law." The trustee contends that "applicable law" should be read as "applicable *nonbankruptcy* law"; because the claims at issue are unenforceable only by virtue of bankruptcy law, the trustee concludes that the claims should be allowed and, hence, counted towards the § 109(e) jurisdictional limitations. However, even the bankruptcy judge below expressed ambivalence with respect to this interpretation of § 502(b)(1). *See Cavaliere,* 194 B.R. at 12 (" [T]here is authority for including bankruptcy law with the meaning of the applicable law reference in § 502(b)(1)."). Indeed, there appears to be little basis for concluding that when Congress wrote "applicable law" it meant "appli-

cable nonbankruptcy law."[3] The phrase "applicable nonbankruptcy law" appears elsewhere in the Code, *see, e.g.,* 11 U.S.C. §§ 541(c)(2), 1125(d), indicating that Congress understood how to expressly impose such a limitation when it intended to. Moreover, the trustee's reading of § 502(b)(1) is at odds with *PCH Associates,* in which the Second Circuit concluded that a loss of secured status pursuant to § 506(a) should be taken into account when determining whether a claim is enforceable. *See* 949 F.2d at 604. If § 506(a) is part of the law that is "applicable" under § 502(b)(1), then bankruptcy law is plainly not excluded categorically from the ambit of § 502(b)(1).

Lastly, the trustee argues from the standpoint of policy: the debt limitations of § 109(e) "must be strictly followed if the integrity of Chapter 13 is to prevail."[4] (Appellee's Br., at 10.) However, this argument begs the question: given that the debt limitations must be strictly adhered to, how are debts calculated for purposes of § 109(e)? The debtors argue, and the Court agrees, that the $691,253.80 of discharged claims are unenforceable. Much as courts have "avoid[ed] the temptation to raise form over substance" by incorporating § 506(a) determinations of secured status into the § 109(e) calculus, *In re Toronto,* 165 B.R. 746, 754 (Bankr.Conn.1994) (citation omitted), congressional intent seems little advanced by denying the benefits of Chapter 13 protection merely on the basis of a large quantity of unenforceable debt. Nor is this conclusion altered by the fact that the unenforceability of the debt arises by virtue of a prior Chapter 7 discharge. Nothing in the Code categorically precludes a debtor from filing consecutive cases under Chapters 7 and 13. *See*

*Johnson,* 501 U.S. at 87, 111 S.Ct. at 2156 ("Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief."). Section 109(e) undeniably imposes a limitation on who may take advantage of a subsequent Chapter 13 filing; the question is how to calculate compliance with that limitation, and, specifically, whether to take into account previously discharged debt that is deemed unsecured pursuant § 506(a). Given that all fully and partially secured debt, as well as all nondischargeable and post-discharge debt, may indisputably be counted towards the applicable jurisdictional limitations, the Court has been provided with no basis to conclude that acceptance of the trustee's interpretation is necessary to prevent the evisceration of either the letter or the spirit of § 109(e).

### Conclusion

For the reasons set forth above, the decision of the bankruptcy court is REVERSED. The case is remanded to the bankruptcy court for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

---

3. The only case cited by the trustee in support of his interpretation merely states, in dicta, "A bankruptcy judge, in determining the validity of a claim, looks to state or nonbankruptcy federal law." In re *Frontier Airlines, Inc.,* 88 B.R. 332, 335 (Bankr.Colo.1988). Contrary conclusions have been reached in *In re Gray,* 174 B.R. 228 (Bankr.E.D.Ky.1994); *In re Turner,* 157 B.R. 904 (Bankr.N.D.Ala.1993); *In re Brentwood Outpatient, Ltd.,* 134 B.R. 267, 269 (Bankr.M.D.Tenn. 1991), *aff'd,* 152 B.R. 727 (M.D.Tenn.1993), *rev'd in part on other grounds,* 43 F.3d 256 (6th Cir.

1994), *cert. denied,* 514 U.S. 1096, 115 S.Ct. 1824, 131 L.Ed.2d 745 (1995).

4. The trustee's argument echoes the bankruptcy judge's observation that "[t]he § 109(e) dollar limitations demonstrate a congressional intent to limit Chapter 13 relief to the individual or sole proprietor with no more than a designated amount of unsecured debt.... The specificity of those limitations reflects a congressional intent that they be strictly applied." 194 B.R. at 14 (citations, internal quotations, and alterations in the original omitted.)